UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL CRUZ,

                        Plaintiff,

v.

VILLAGE OF SPRING VALLEY *et al.*,

                        Defendants.

No. 21-CV-2073 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

John V. Decolator, Esq.
Garden City, NY
*Counsel for Plaintiff*

Vernee Ciara Pelage, Esq.
Brian S. Sokoloff, Esq.
Sokoloff Stern LLP
*Counsel for Defendants Village of Spring Valley, Spring Valley Police Department, and Police Officer Timothy Ward*

Robert Benjamin Weissman, Esq.
Saretsky Katz & Dranoff, LLP
Elmsford, NY
*Counsel for Defendant County of Rockland and County of Rockland District Attorney*

KENNETH M. KARAS, District Judge:

      Daniel Cruz ("Cruz" or "Plaintiff") brings this Action under 42 U.S.C. § 1983 and state law against the Village of Spring Valley ("Spring Valley"), the Spring Valley Police Department, Police Officer Timothy Ward ("Ward"), Police Officer John Doe (together, the "Spring Valley Defendants"), the County of Rockland ("Rockland County"), and the Rockland County District Attorney, (together, the " Rockland County Defendants" and collectively, "Defendants") alleging false arrest and imprisonment, malicious prosecution, negligence,

intentional infliction of emotional distress, and violation of Plaintiff's Fifth, Sixth, and Fourteenth Amendment rights. (*See generally* Am. Compl. (Dkt. No. 15).) Before the Court is the Rockland County Defendants' Motion To Dismiss the Amended Complaint as against the Rockland County Defendants (the "Motion"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. (Dkt. No. 21).) For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiff's Amended Complaint and are assumed true for the purpose of resolving the instant Motion.[1] *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

On October 23, 2013, Plaintiff was panhandling outside a store in Spring Valley, New York. (Am. Compl. ¶ 17.) Ward, an undercover Spring Valley police officer, approached Plaintiff and asked where he could obtain drugs. (*Id.* ¶ 18.) Plaintiff told Ward he could obtain marijuana and crack cocaine for him and used Ward's phone to make a call. (*Id.* ¶ 19.) Plaintiff and Ward then bicycled to an apartment complex, where Plaintiff took $40 from Ward, left for approximately five to ten minutes, and returned with two bags of marijuana and a bag of crack cocaine, which he gave to Ward. (*Id.* ¶ 20.) Plaintiff also purchased a small bag of crack cocaine for himself, which he immediately started smoking with a crack pipe. (*Id.* ¶ 20–21.) Plaintiff also asked Ward for a small amount of the crack cocaine Ward had purchased. (*Id.* ¶

---

[1] "[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)).

22.) Ward gave Plaintiff a small amount of crack cocaine from his bag, and Plaintiff smoked that piece of crack in front of Ward. (*Id.*)

On October 29, 2013, Plaintiff was panhandling in front of the same store when he was again approached by Ward, who asked Plaintiff for the "same thing" as last time. (*Id.* ¶ 23.) Plaintiff again used Ward's phone to make a phone call, bicycled with Ward to a location near Lake Street in Spring Valley, took $40 from Ward, left for approximately five or ten minutes, and returned with a quantity of marijuana and crack cocaine. (*Id.* ¶ 24.) Plaintiff again asked Ward for some of the crack cocaine, and after Ward gave him some, Plaintiff smoked that portion in front of Ward. (*Id.* ¶ 25.)

On May 14, 2014, Plaintiff was arrested and detained by an unknown police officer. (*Id.* ¶ 26.) Plaintiff alleges that the officer placed Plaintiff in handcuffs that were too tight. (*Id.* ¶ 28.) Plaintiff was arraigned and charged with criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. (*Id.* ¶ 33.) Plaintiff was indicted by a grand jury, but the indictment was dismissed "because the prosecution had failed to instruct the grand jury on the defense of agency." (*Id.* ¶ 52.) However, on appeal the appellate court reinstated the indictment. (*Id.* ¶ 53.)

After a jury trial in 2017, Plaintiff was convicted of criminal sale of a controlled substance in the third degree. (*Id.* ¶ 54.) Plaintiff was found not guilty of criminal possession of a controlled substance in the third degree, but he was convicted of the lesser included offense of criminal possession of a controlled substance in the seventh degree. (*Id.*)

Plaintiff appealed, and the appellate court vacated his conviction for criminal sale of a controlled substance in the third degree. (*Id.* ¶ 55.) According to Plaintiff, the appellate court found that "the prosecution had failed to satisfy any of the nine (9) criteria or factors that must be

considered when evaluating an agency defense." (*Id.* ¶ 56.) On November 21, 2019, after having been incarcerated for five and a half years "with exceptions," Plaintiff was released from prison. (*Id.* ¶¶ 34, 57.)[2]

The Amended Complaint brings five causes of action: (1) false arrest claims under New York State common law and 42 U.S.C. § 1983 against the Spring Valley Defendants, (*id.* ¶¶ 58–76); (2) malicious prosecution claims under New York State common law and 42 U.S.C. § 1983 against the Rockland County Defendants, (*id.* ¶¶ 77–86); (3) a claim of negligent hiring, training, supervision and retention in connection with the conduct of Officers Ward and Doe against the Spring Valley Defendants, (*id.* ¶¶ 87–96); (4) a § 1983 *Monell* policy claim against the Spring Valley Defendants, (*id.* ¶¶ 97–111); and (5) a claim for punitive damages against all Defendants, (*id.* ¶¶ 112–114.) On May 27, 2021, Plaintiff withdrew the fifth cause of action for punitive damages and the state law malicious prosecution claims against the Rockland County Defendants. (Pl.'s Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") at 3 (Dkt. No. 28).)

B.  Procedural History

Plaintiff originally filed his Complaint in the Supreme Court of the State of New York for Rockland County on February 18, 2021. (Dkt. No. 1-1.) On March 10, 2021, the Rockland County Defendants filed a Notice of Removal to remove the case to the United States District Court for the Southern District of New York. (Dkt. No. 1.) On March 12, 2021, the Rockland County Defendants filed a letter outlining the grounds for their anticipated motion to dismiss. (Dkt. No. 3.) On March 17, 2021, the Spring Valley Defendants also filed a letter outlining the grounds for their anticipated motion to dismiss. (Dkt. No. 6.) On April 28, 2021, after seeking

---

[2] The Court notes that it is unclear what Plaintiff means when he alleges that he was incarcerated for five and a half years "with exceptions." (*See id.* ¶ 34.)

permission from the Court, (*see* Dkt. No. 12), Plaintiff filed an Amended Complaint, (Dkt. No. 15). On May 27, 2021, the Spring Valley Defendants filed an Answer to the Amended Complaint. (Dkt. No. 17.) On June 3, 2021, the Rockland County Defendants filed another pre-motion letter outlining the grounds for their anticipated motion to dismiss, (Dkt. No. 19), and the same day, the Court set a briefing schedule, (Dkt. No. 20). Also on June 3, 2021, the Rockland County Defendants filed their Motion to Dismiss and accompanying papers. (Dkt. Nos. 21–23.) On August 12, 2021, Plaintiff filed an Opposition, (Dkt. No. 28), and the Rockland County Defendants replied on August 25, 2021, (Dkt. No. 29.)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her]

5

claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B. Analysis

    1. Eleventh Amendment

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states'

6

Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration and quotation marks omitted). "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)).

"The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (alteration omitted). This includes prosecutors. *See Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) ("To the extent [the plaintiff] seeks damages from [former and current prosecutors] in their official capacities, the Eleventh Amendment bars his claims."); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, [he or] she is an agent of the State, and therefore immune from suit in [his or] her official capacity."); *Dejesus-Vasquez v. Bethencourt*, No. 19-CV-967, 2020 WL 1047909, at *5 (S.D.N.Y. Mar. 4, 2020) (dismissing claims against district attorney and assistant district attorney as barred by the Eleventh Amendment).

Thus, to the extent that Plaintiff asserts claims against the Rockland County District Attorney in his official capacity, those claims are dismissed.

2. Prosecutorial Immunity

"Absolute immunity protects a prosecutor not only from liability but also from suit." *Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) (citation and quotation marks omitted); *see also Barnett v. City of Yonkers*, No. 15-CV-4013, 2020 WL 2539005, at *4 (S.D.N.Y. May

19, 2020) (same).  Prosecutors are entitled to absolute immunity from civil suits for damages under § 1983 when "function[ing] as advocates for the state in circumstances intimately associated with the judicial phase of the criminal process." *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004) (citation and quotation marks omitted); *see also Kroemer v. Tantillo*, 758 F. App'x 84, 86–87 (2d Cir. 2018) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." (alterations and quotation marks omitted) (*quoting Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995))).  However, not every action performed by a prosecutor is "absolutely immune merely because [it was] performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  Rather, a prosecutor's entitlement to absolute immunity turns on "the capacity in which the prosecutor acts at the time of the alleged misconduct." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000).  Thus, to determine whether a prosecutor's conduct is entitled to absolute immunity, courts apply "a functional approach, which looks to the nature of the function performed [by the prosecutor], not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations and quotation marks omitted); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (noting that courts "must take account of . . . 'functional' considerations" in deciding "whether absolute immunity attaches to a particular kind of prosecutorial activity" (citations omitted)).

It is clear that "the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions" covered by absolute immunity.  *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (*citing Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Hill*, 45 F.3d at 661 (noting that absolute immunity covers such acts as "initiating a prosecution and presenting the case" in court proceedings (citations omitted)).  Also covered is prosecutors'

"professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley*, 509 U.S. at 273. Absolute immunity even protects "the knowing presentation of perjured testimony to a grand jury, without any prosecutorial involvement in its earlier inducement." *Bernard*, 356 F.3d at 506 (citation omitted); *see also Hill*, 45 F.3d at 661 (noting that prosecutors are "immune for conduct in preparing for [prosecutorial] functions," including "evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged" (citations omitted)). Furthermore, a prosecutor's motives for actions that are deemed to be within his or her role as an advocate are irrelevant for purposes of absolute immunity. *See Shmueli*, 424 F.3d at 237–38 (holding that absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy"); *Bernard*, 356 F.3d at 503 (holding that "once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused" (citation omitted)).

By contrast, "[w]hen a [prosecutor] functions outside his or her role as an advocate for the People, the shield of [absolute] immunity is absent." *Hill*, 45 F.3d at 661. Specifically, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley*, 509 U.S. at 273 (citation and quotation marks omitted); *see also Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) ("[W]hen a prosecutor . . . performs the investigative functions normally performed by a detective or police officer, he is eligible only for qualified immunity." (citations and quotation marks omitted)). In determining

9

whether a prosecutor is functioning within a prosecutorial or an investigative role, courts must look to the prosecutor's general "role and function in an ongoing proceeding," and will reach a determination based "chiefly on whether there is pending or in preparation a court proceeding in which the prosecutor acts as an advocate." *Ogunkoya*, 913 F.3d at 70 (citation and quotation marks omitted).

Here, Plaintiff makes no allegations suggesting that the prosecution engaged in investigatory functions. Nor does Plaintiff claim that any allegedly investigatory acts by the prosecution were done prior to or independent from the "judicial phase of the criminal process." *DiBlasio v. Novello*, 344 F.3d 292, 300 (2d Cir. 2003) (quoting *Imbler*, 424 U.S. at 430); *see also Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858955, at *10 (S.D.N.Y. Feb. 29, 2016) ("The [a]mended [c]omplaint's generalized allegations fail to adequately allege that either [of the defendant prosecutors] functioned in any way that would prevent immunity from attaching."); *Watson v. Grady*, No. 09-CV-3055, 2010 WL 3835047, at *18 (S.D.N.Y. Sept. 30, 2010) ("Even construed liberally, [the] [p]laintiff does not allege any particular acts of investigative misconduct by [the defendant prosecutors.]").

Accordingly, Plaintiff's claims against the Rockland County District Attorney in his official capacity, as well as any claims against the Rockland County District Attorney's Office, are dismissed due to prosecutorial immunity. *See Valentin v. City of Rochester*, 783 F. App'x 97, 100 (2d Cir. 2019) (dismissing district attorney's office and its current and former district attorneys from suit because they were entitled to prosecutorial immunity); *Maldanado v. New York City*, No. 16-CV-4191, 2016 WL 7494861, at *3 (E.D.N.Y. Dec. 29, 2016) (dismissing claim where the plaintiff "alleged no conduct by the Queens County District Attorney's Office that falls outside the scope of prosecutorial immunity as defined by federal law."); *Arum v.*

*Miller*, 331 F. Supp. 2d 99, 112 (E.D.N.Y. 2004) ("[D]ue to prosecutorial immunity, [the plaintiff's] claim against the Nassau County District Attorney's Office also must be dismissed.").

3. *Monell* Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). That is, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008).[3]

Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009); *see also Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing a claim against agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *report and recommendation adopted*, 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Jan. 3, 2011) (dismissing a claim against the county because the complaint "[did] not allege the

---

[3] Counties are municipal entities for purposes of *Monell* liability. *See Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991) (holding that a county could be held liable for a county district attorney's long practice of ignoring evidence of police misconduct and sanctioning and covering up wrongdoing).

11

existence of an unconstitutional custom or policy"), *report and recommendation adopted sub nom.*, *Arnold v. Westchester Cnty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 25, 2010). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton*, 566 F. Supp. 2d at 270 ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur*, 475 U.S. at 478 (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong") (italics in original). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal

policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *see also Roe*, 542 F.3d at 36–37 (describing the second category for establishing *Monell* liability); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability). Moreover, a plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Roe*, 542 F.3d at 37 (holding that "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury" (quoting *Brown*, 520 U.S. at 404)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Johnson v. City of*

13

*New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

The Rockland County Defendants argue that Plaintiff fails to satisfy the fifth element because he has not alleged the existence of a policy that "supposedly contributed to his prosecution, [nor has he] provide[d] detailed factual pleading concerning such policy." (Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem") at 9 (Dkt. No. 22.)  The Court agrees.

Plaintiff fails to cite or describe any policies officially promulgated by Rockland County or the Rockland County District Attorney's Office that allegedly led to his prosecution.  To survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015) (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)).  "Conclusory allegations that there was such a policy or custom, without identifying or alleging supporting facts, is insufficient to state a claim." *Maynard v. City of New York*, No. 13-CV-3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013); *see also Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 124 (2d Cir. 1991) (reaffirming "that an allegation of municipal policy or custom would be insufficient if wholly conclusory"); *Lara-Grimaldi v. Cty. of Putnam,* No. 17-CV-622, 2018 WL 1626348, at *20 (S.D.N.Y. Mar. 29, 2018) (dismissing a *Monell* claim where the plaintiff failed "to cite or describe a policy officially promulgated [the county] or a specific act taken by a final

14

policymaker of [the county]" relevant the plaintiff's claims) (collecting cases); *Guerrero v. City of New York*, No. 12-CV-2916, 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("At the pleading stage, the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (quotation marks omitted)); *Santos*, 847 F. Supp. 2d at 577 ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory assertions of the plaintiff, [the plaintiff's] claims against the [c]ity are dismissed." (citation omitted)); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *2 n. 3 (S.D.N.Y. Sept. 28, 2011) ("Since [*Iqbal* and *Twombly*], courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability . . . .") (collecting cases), *aff'd*, 480 Fed. App'x 627 (2d Cir. 2012); *5 Borough Pawn, LLC v. City of New York*, 640 F. Supp. 2d 268, 300 (S.D.N.Y. 2009) (dismissing a *Monell* claim where the "plaintiffs fail[ed] to allege any facts showing that there is a [c]ity policy—unspoken or otherwise—that violates the Federal Constitution"); *cf. Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (holding that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"); *Simms*, 480 Fed. App'x at 631 n.4 ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's [policy] prior to discovery . . . this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." (citation omitted)).

Accordingly, Plaintiff cannot maintain a claim against Rockland County or the Rockland County District Attorney, and those claims are therefore dismissed. And, because the Court has

dismissed all of the Rockland County Defendants, the Court need not reach the merits of Plaintiff's claims against them.

### III. Conclusion

For the reasons stated above, the Court grants the Rockland County Defendants' Motion To Dismiss. Because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 21.)

SO ORDERED.

DATED:   February 11, 2022
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE