UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANIEL CRUZ,

                              Plaintiff,

         v.

THE COUNTY OF ROCKLAND, THE
VILLAGE OF SPRING VALLEY, THE
SPRING VALLEY POLICE
DEPARTMENT, THE ROCKLAND
COUNTY DISTRICT ATTORNEY, POLICE
OFFICER TIMOTHY WARD, and POLICE
OFFICER "JOHN DOE," *the name being
fictitious and unknown to Plaintiff,*

                              Defendants.

---

No. 21-CV-2073 (KMK)

OPINION & ORDER

Appearances:

John V. Decolator, Esq.
Garden City, NY
*Counsel for Plaintiff*

Brian S. Sokoloff, Esq.
Sanjana Biswas, Esq.
Sokoloff Stern LLP
Carle Place, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Plaintiff Daniel Cruz ("Plaintiff" or "Cruz") brings this Action alleging violations of state

and federal law against the Village of Spring Valley (the "Village"), the Spring Valley Police

Department (the "SVPD"), Police Officer Timothy Ward ("Ward"), and an unidentified officer,

John Doe (the "Doe Defendant," and collectively, the "Defendants"). Specifically, Plaintiff

alleges causes of action under state and federal law related to his 2017 arrest and prosecution for

narcotics offenses.  (*See generally* Am. Compl. (Dkt. No. 15).)[1]  Before the Court is Defendants'

Motion for Summary Judgment.  (*See* Not. of Mot. (Dkt. No. 62).)  For the reasons set forth

below, Defendants' Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from the Defendants' statement pursuant to Local Civil

Rule 56.1.  (*See* Defs' Rule 56.1 Statement ("Defs' 56.1") (Dkt. No. 65).)

Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise

statement, in numbered paragraphs, of the material facts as to which the moving party contends

there is no genuine issue to be tried."  Local Civ. R. 56.1(a).  The nonmoving party, in turn, must

submit "a correspondingly numbered paragraph responding to each numbered paragraph in the

statement of the moving party, and if necessary, additional paragraphs containing a separate,

short[,] and concise statement of additional material facts as to which it is contended that there

exists a genuine issue to be tried."  *Id.* at 56.1(b).  "If the opposing party . . . fails to controvert a

fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to

the local rule."  *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (citation omitted); *see

also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (adopting the same rule).

Plaintiff failed to submit a Response 56.1 Statement, (*see generally* Dkt.), but has

included a statement of facts in his Opposition, (Pl's Mem. of Law in Opp'n to Defs' Mot. for

---

[1] Plaintiff also brought claims against the County of Rockland and the Rockland County District Attorney (together, the "County Defendants").  (*See generally* Am. Compl.)  In a previous Opinion, the Court dismissed all claims against the County Defendants.  (*See* Op. & Order (Dkt. No. 30).)

Summ. J. ("Pl's Opp'n") at 2–5 (Dkt. No. 69).)[2]  Although Plaintiff has not complied with Local Rule 56.1, the Court has reviewed his submission and will note disputed facts where relevant to deciding the instant Motion.

Where necessary, the Court also cites directly to the admissible evidence submitted by the Parties.  The facts as described below are in dispute to the extent indicated.

### 1.  Parties

Plaintiff Daniel Cruz is a resident of Rockland County, New York.  (Defs' 56.1 ¶ 1.) SVPD is an agency of the Village.  (*Id.* ¶ 3.)  Ward was, at all relevant times, a police officer with the Village.  (*Id.*)

### 2.  Events of October 23 and October 29, 2013

On October 23, 2013, at approximately 1:25 PM, Ward met with SVPD investigators for an undercover assignment involving a narcotics transaction in the area of North Main Street in the Village.  (Defs' 56.1 ¶ 4.)  The investigators gave Ward $40 and equipped him with video and audio recording devices to capture the transaction.  (*Id.* ¶ 5.)  Soon after, Ward approached an unknown man—later identified as Cruz—and asked him if he knew where to find pills or marijuana.  (*Id.* ¶ 6.)  Cruz explained to Ward that he did not know where Ward could find pills but said he could get him marijuana and crack cocaine.  (*Id.*)  Cruz used Ward's cell phone to contact an unknown person and then told Ward they could buy drugs at a nearby apartment complex, a location they biked to.  (*Id.* ¶ 7.)  Upon arrival at the apartment complex parking lot, Ward gave the $40 to Cruz.  (*Id.* ¶ 8.)  Cruz walked to another location out of Ward's sight.  (*Id.*

---

[2] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper righthand corner of each page.

¶ 9.)[3]  Approximately five minutes later, Cruz gave Ward two Ziplock bags containing marijuana and one Ziplock bag containing crack cocaine.  (*Id.* ¶ 11.)  Cruz also had his own portion of what appeared to be crack cocaine, which he smoked in front of Ward.  (*Id.* ¶ 12.)  After the transaction was complete, Ward met with the investigators to debrief and handed the narcotics and recording devices to SVPD Detective Hughes ("Hughes").  (*Id.* ¶ 13.)  Ward discovered that Cruz had erased the call information from his cell phone and also determined that the recordings of the transaction were poor.  (*Id.* ¶ 14.)  The video recording had an incorrect date and time and was cut short, and there was no audio recording of the incident.  (*Id.* ¶ 15.)

Ward met with investigators on October 29, 2013 to conduct a second buy and, at around 3:15 PM, returned to North Main Street with $40 and recording devices.  (*Id.* ¶ 16.)  Ward approached Cruz and asked if he could "get the same thing."  (*Id.* ¶ 17.)  Cruz again used Ward's cellphone to contact someone and then told Ward they needed to go to Lake Street to buy the drugs.  (*Id.* ¶ 18.)  Upon arriving at 40 Lake Street, Ward gave the $40 to Cruz, who then walked to an area around 20 Lake Street and out of Ward's sight.  (*Id.* ¶ 19.)[4]  Approximately five minutes later, Cruz returned with one bag of crack cocaine and one bag of marijuana.  (*Id.* ¶ 21.)  Cruz asked Ward if he could have some of the crack cocaine, and Ward agreed.  (*Id.* ¶ 22.)  Cruz smoked the crack cocaine in front of Ward.  (*Id.* ¶ 23.)  After the transaction, Ward met with the investigators to debrief and again handed the narcotics and recording devices to Hughes.  (*Id.* ¶ 24.)  Ward also discovered that Cruz had again erased the call information from his cell phone; however, the recording devices had successfully captured the transaction.  (*Id.* ¶ 25.)

---

[3] Cruz told the alleged drug dealer to hide behind the bushes during the transaction. (Defs' 56.1 ¶ 10.)

[4] Cruz again told the alleged drug dealer to hide behind the bushes.  (Defs' 56.1 ¶ 20.)

### 3.  Subsequent Criminal Proceedings and Appeal

On May 12, 2014, Ward signed felony and misdemeanor complaints against Cruz.  (*Id.* ¶ 26.)  The felony complaint charged Cruz with two counts of Criminal Sale of a Controlled Substance in the Fourth Degree, New York Penal Law § 220.34(1), one count each for the October 23 and October 29, 2013 transactions.  (Defs' 56.1 ¶ 27.)[5]  The misdemeanor complaint charged Cruz with two counts of Criminal Sale of Marijuana in the Fifth Degree, New York Penal Law § 221.35, one count for each of the October 23 and October 29, 2013 transactions.  (Defs' 56.1 ¶ 28.)  SVPD arrested Cruz on May 20, 2014, and he was arraigned the same day.  (*Id.* ¶ 29.)

On May 23, 2014, Rockland County Assistant District Attorney Maria Gaston-DeSimone ("Gaston-DeSimone") presented the charges to a grand jury and requested the grand jury "consider two counts of [C]riminal [S]ale of a [C]ontrolled [S]ubstance in the [T]hird [D]egree and two counts of [C]riminal [P]ossession of a [C]ontrolled [S]ubstance in the [T]hird [D]egree." (*Id.* ¶ 30.)  During the grand jury presentation, Ward testified about his October 23 and 29 interactions with Cruz, and Hughes testified about the field-tests he conducted on the drugs, confirming the presence of crack cocaine and marijuana.  (*Id.* ¶ 31.)  Gaston-DeSimone instructed the grand jury on the law, and the grand jury subsequently voted to indict Cruz on all four charges.  (*Id.* ¶ 32.)

On September 8, 2014, Cruz pled guilty to one count of Criminal Possession of a Controlled Substance in the Third Degree and was sentenced to six years in prison.  (*Id.* ¶ 33.)  Cruz waived his right to a trial, confirmed he was represented, and confirmed he had an opportunity to consult with his attorney before pleading guilty.  (*Id.* ¶ 34.)  Two months later,

---

[5] The complaint charged Cruz with a third count for a January 31, 2014 drug transaction, (Defs' 56.1 ¶ 27), but Cruz was never indicted on this charge, (*id.* at 4 n.1.)

Cruz sought to vacate his plea and dismiss his indictment, asserting an agency defense. (*Id.* ¶ 35.) On August 10, 2015, the Rockland County Court (the "County Court") dismissed the indictment. (*Id.*) The People appealed the dismissal of the indictment on August 26, 2015. (*Id.* ¶ 36.) On November 16, 2016, the Appellate Division reversed the County Court's decision, finding that "no reasonable view of the evidence presented to the grand jury warrant[ed] an instruction on the defense of agency. The defendant's actions were consistent with that of a 'steerer,' and not a mere extension of the buyer." (*Id.* ¶ 37–38.)

Cruz's criminal trial began in 2017. (*Id.* ¶ 39.) Ward testified about his October 23 and 29, 2013 interactions with Cruz. (*Id.* ¶ 40.) Cruz moved to dismiss each count of the indictment, arguing that the People had failed to prove the charges and disprove the agency defense beyond a reasonable doubt. (*Id.* ¶ 41.) The trial court denied the motion. (*Id.* ¶ 42.) Testifying in his defense, Cruz gave his version of the October 23 and 29, 2013 transactions. (*Id.* ¶ 43.) He identified the person from whom he procured drugs on October 23 as "V," and the person from whom he procured drugs on October 29 as "C.W." (*Id.* ¶ 44.) Cruz confirmed he asked Ward for a small amount of the crack cocaine that Ward purchased and that Ward agreed to give it to him. (*Id.* ¶ 45.) Cruz renewed his application to dismiss the indictment, again claiming the People failed to prove the charges and disprove the agency defense. (*Id.* ¶ 46.) The court again denied the motion and referred the charges to the jury. (*Id.* ¶ 47.) On June 16, 2017, the jury found Cruz guilty of Criminal Sale of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Seventh Degree for the October 29, 2013 transaction. (*Id.* ¶ 48–49.) The jury also found Cruz guilty of the lesser included offense of Criminal Possession of a Controlled Substance in the Seventh Degree with respect to the October 23, 2013 transaction. (*Id.* ¶ 50.)

Cruz challenged the verdict as repugnant as to the October 29 transaction and asked the trial court not to accept it due to the People's failure to disprove the agency defense.  (*Id.* ¶ 51.)  The trial court denied Cruz's motion.  (*Id.* ¶ 52.)  On July 11, 2017, Cruz moved to set aside the verdict, again claiming the verdict was repugnant as the People failed to disprove the agency defense.  (*Id.* ¶ 53.)  The trial court denied the motion on August 23, 2017, finding "there was ample trial evidence upon which the jury could have rejected Defendant's agency defense."  (*Id.* ¶¶ 54–55.)  On September 19, 2017, the trial court sentenced Cruz to ten years imprisonment for the Criminal Sale of a Controlled Substance in the Third Degree charge, two concurrent one-year terms for the two misdemeanor possession charges, and three years of post-release supervision.  (*Id.* ¶ 56.)

Cruz appealed his conviction for the October 29 transaction.  (*Id.* ¶ 57.)  On October 9, 2019, the Appellate Division vacated Cruz's conviction for Criminal sale of a Controlled Substance in the Third Degree and dismissed that count of the indictment.  (*Id.* ¶ 58.)  The Appellate Division also found the verdict as a whole irreconcilable and accordingly vacated the Criminal Possession of a Controlled Substance in the Seventh Degree conviction and dismissed the corresponding count in the indictment.  (*Id.*)

Cruz was released from prison on November 21, 2019.  (Decl. of Brian S. Sokoloff, Esq. ("Sokoloff Decl.") Ex. D at 55:16–18 (Dkt. No. 66-4).)[6]  Cruz served his notice of claim on February 18, 2020.  (Defs' 56.1 ¶ 60.)

---

[6] The Parties have provided the Court with a mini-transcript of Plaintiff's 50-h deposition, (*see* Sokoloff Decl. Ex. D), so the Court cites to the page number in the top right of each page of the mini-transcript, rather than the ECF-stamped page number.

B.  Procedural History

The Court has discussed the procedural background of this Action in a previous Opinion. (*See* Op. & Order (Dkt. No. 30).)  The Court will discuss subsequent proceedings only as relevant to deciding the instant Motion.

On November 7, 2022, Defendants submitted a letter requesting the Court's leave to file a Motion for Summary Judgment.  (*See* Letter from Brian S. Sokoloff, Esq. to Court (November 7, 2022) (Dkt. No. 59).)  At a conference held on November 15, 2022, the Court granted Defendants' request and set a briefing schedule.  (*See* Dkt. (minute entry for November 15, 2022); Order (Dkt. No. 61).)  On December 15, 2022, Defendants filed their Motion for Summary Judgment and accompanying papers.  (Not. of Mot.; Defs' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs' Mem.") (Dkt. No. 64); Defs' 56.1; Sokoloff Decl.)  After a request for an extension which the Court granted (Dkt. Nos. 67–68), Plaintiff filed his Opposition on January 24, 2023.  (Pl's Opp'n.)  On February 7, 2023, Defendants filed their Reply.  (Defs' Reply (Dkt. No. 70).)

## II.  Discussion

A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute

exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual

issues to be tried."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims."  *Geneva Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements' must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'"  *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

B.  Analysis

Plaintiff's Amended Complaint brings five causes of action: (1) false arrest claims under New York State common law and 42 U.S.C. § 1983, (Am. Compl. ¶¶ 58–76); (2) malicious prosecution claims under New York common law and 42 U.S.C. § 1983, (*id.* ¶¶ 77–86); (3) a claim of negligent hiring, training, supervision and retention in connection with the conduct of Officers Ward and Doe, (*id.* ¶¶ 87–96); (4) a *Monell* claim, (*id.* ¶¶ 97–111); and (5) a claim for punitive damages, (*id.* ¶¶ 112–114).

10

### 1.  Abandonment

Defendants argue that Plaintiff has failed to address their arguments in his Opposition and, as a result, has abandoned most of his claims.  (Defs' Reply 6–7.)  The Court agrees.

Even drawing all inferences in his favor, Plaintiff's Opposition addresses Defendants' arguments concerning only the timeliness of his state false arrest claim and the merits of his federal malicious prosecution claim.  (Pl's Opp'n 6–8.)  Accordingly, the Court deems all of Plaintiff's other claims abandoned and grants summary judgment to Defendants as to those claims.  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (deeming claims abandoned where plaintiff "fail[ed] to argue that they should survive [defendant's] motion for summary judgment" while arguing against the motion as to his other claims); *Bryant v. Steele*, 462 F. Supp. 3d 249, 270 (E.D.N.Y. 2020) ("A party abandons a claim in the context of a summary judgment motion when she does not respond to arguments concerning that claim."), *aff'd sub nom. Bryant v. Iheanacho*, 859 F. App'x 604 (2d Cir. 2021).

### 2.  State False Arrest Claim[7]

Defendants argue that Plaintiff's false arrest claim is untimely because he failed to file a notice of claim within 90 days of his arraignment, as required by New York law.  (Defs'

---

[7] Although Plaintiff cites only to New York cases in his Opposition, he does not indicate whether he is arguing as to the timeliness of both his state and federal false arrest claims or only his state false arrest claim.  (Pl's Opp'n 6.)  Defendants argue that Plaintiff's federal false arrest claim is untimely.  (Defs' Mem. 17.)  The Court agrees.

The statute of limitations for false arrest claims filed in New York under § 1983 is three years.  *See Rivera v. City of New York*, No. 20-CV-9968, 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022).  "Although § 1983 claims accrue when the plaintiff knows or has reason to know of the harm . . . there remains some inconsistency in Second Circuit authority as to exactly when a false arrest claim accrues."  *Bynum v. Doe*, No. 16-CV-6332, 2019 WL 1259568, at *3 (E.D.N.Y. Mar. 19, 2019) (first citing *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) and then citing *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)) (determining that the plaintiff's false arrest claim accrued on the date of his arraignment, and not the date of his arrest).

Mem. 17.)  Plaintiff argues in response that his false arrest claim accrued on the date he was released from custody and that he timely filed his notice of claim less than 90 days later.  (Pl's Opp'n 6.)

Under New York Municipal Law § 50(e), a plaintiff is required to serve notice of a tort against a public officer within 90 days of the accrual of the claim.  False arrest and false imprisonment have a one-year statute of limitations under New York law.  *See* N.Y. C.P.L.R. § 215; *Charnis v. Shohet*, 757 N.Y.S.2d 671, 673 (App. Div. 2002).  A claim for false arrest and imprisonment accrues on the date of release from custody.  *See Ragland v. N.Y.C. Hous. Auth.*, 613 N.Y.S.2d 937, 939 (App. Div. 1994); *Charnis*, 757 N.Y.S.2d at 673.

It is undisputed that Plaintiff was released from custody on November 21, 2019. (Sokoloff Decl. Ex. D at 55:16–18.)  As a result, he was required to file his notice of claim by February 19, 2020 and bring suit by February 19, 2021.  Plaintiff filed his notice of claim on February 18, 2020, (Defs' 56.1 ¶ 60), and filed this Action on February 18, 2021, (*see generally* Compl. (Dkt. No. 1-1).)  Thus, Plaintiff's state false arrest claim was timely brought.

However, because Plaintiff has failed to address Defendants' arguments concerning the merits of his state false arrest claim (*see generally* Pl's Opp'n), the Court deems this claim abandoned, *see Kovaco*, 834 F.3d at 143; *Bryant*, 462 F. Supp. 3d at 270.[8]

---

Here, there is no difference whether Plaintiff's federal false arrest claim accrued on the date of his arrest or his arraignment because it is undisputed that both occurred on May 20, 2014. (Defs' 56.1 ¶ 29.)  Thus, Plaintiff's federal false arrest claim is time-barred because the statute of limitations expired on May 20, 2017, and it is undisputed that he did not file this Action until February 18, 2021.  (*See generally* Compl. (Dkt. No. 1-1).)

[8] To the extent that Plaintiff intended to contest the timeliness of his other state law claims by asserting that he "filed a timely Notice of Claim," (Pl's Opp'n 6), the Court declines to review the timeliness of these claims because Plaintiff has put forward no argument contesting Defendants' arguments that those claims are time-barred and because Defendants would be granted summary judgment on them—even if they were timely brought—as Plaintiff has failed

### 3. Federal Malicious Prosecution Claim

Plaintiff argues that his federal malicious prosecution claim must survive because Plaintiff avers he "would not have been . . . charged [with drug dealing] unless the district attorney was given information that deviated from the actual facts [by the Defendants]." (Pl's Opp'n 8.)  Defendants argue in response that Plaintiff has failed to raise a genuine dispute of material fact because he has adduced no evidence to support his assertion that Ward forwarded any false information to the District Attorney.  (Defs' Reply 8–13.)

"While the tort of malicious prosecution protects against the consequences of wrongful prosecution, public policy favors bringing criminals to justice, and accusers must be allowed room for benign misjudgments.  The law therefore places a heavy burden on malicious prosecution plaintiffs."  *Smith–Hunter v. Harvey*, 734 N.E.2d 750, 752 (N.Y. 2000); *see also Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004) (same).  "To state a § 1983 malicious prosecution claim a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law."  *Rodriguez v. City of New York*, No. 21-CV-8565, 623 F. Supp. 3d 225, 238 (S.D.N.Y. 2022) (quoting *Cornelio v. Connecticut*, 32 F.4th 160, 179 (2d Cir. 2022)).  Under New York law, a plaintiff asserting malicious prosecution must demonstrate: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions."  *Dettelis v. Sharbaugh*, 919 F.3d 161, 163–64 (2d Cir. 2019) (quotation marks and citation omitted).

---

to contest Defendants' arguments on the merits, (*see generally* Pl's Opp'n).  *See Kovaco*, 834 F.3d at 143; *Bryant*, 462 F. Supp. 3d at 270.

"Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding, a plaintiff may overcome that presumption by demonstrating that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."  *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2017 WL 1064682, at *2 (S.D.N.Y. Mar. 20, 2017), *aff'd*, 722 F. App'x 32 (2d Cir. 2018) (citation and quotation marks omitted).  Regarding claims against police officers, "courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors."  *Id.* (quotation marks and citations omitted); *Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015) ("Showing that the police 'failed to make a complete and full statement of facts to the [prosecutor], misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith' satisfies the initiation element of malicious prosecution." (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160 (2d Cir. 2010))); *Blake v. Race*, 487 F. Supp. 2d 187, 211 (E.D.N.Y. 2007) (finding initiation element met where defendant officers "allegedly fed the facts to [a police informant], thereby providing the unknowing D[istrict] A[ttorney] with what may be considered a fabricated eyewitness, who made the line-up identification and provided testimony").

In addition, to prevail on a cause of action for malicious prosecution under § 1983, the plaintiff must establish that "there was a . . . sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000); *see also Roman v. City of Mount Vernon*, No. 21-CV-2214, 2022 WL 2819459, at *10 (S.D.N.Y. July 19, 2022) ("In addition to the elements of a state-law malicious

14

prosecution claim, however, to state a federal malicious prosecution claim under § 1983, a plaintiff must also have suffered a post-arraignment deprivation of liberty implicating his Fourth Amendment rights.").

Finally, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause." *Soto v. City of New York*, 132 F. Supp. 3d 424, 452 (E.D.N.Y. 2015) (quotation marks omitted) (quoting *Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir.2015)).

Plaintiff argues that "the police," which the Court takes to mean Ward or the Doe Defendant, forwarded false information to the district attorney which resulted in the district attorney initiating proceedings against him. (Pl's Opp'n 7–8.) However, as Defendants point out, Plaintiff has failed to provide *any* evidence concerning the information that Ward or the Doe Defendant forwarded. (Defs' Reply 12–13.)

Plaintiff's account of the facts in his Opposition, which is based on the trial transcripts, (Pl's Opp'n 2–5), does not diverge from that provided by Defendants in their 56.1 Statement, (*see generally* Defs' 56.1). Given that Plaintiff does not dispute any of the information adduced at trial, it is unclear to the Court what falsified information Plaintiff is even alleging was shared with the district attorney. Thus, summary judgment for Defendants is appropriate on this claim because Plaintiff has merely speculated that Ward or the Doe Defendant forwarded false information. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) (noting that the chain of causation between the officer's conduct and the malicious prosecution claim is broken "*in the absence of evidence* that the police officer misled or pressured the [prosecutor] who could be expected to exercise independent judgment" (emphasis added)); *Bailey*, 79 F. Supp. 3d at 449 ("A successful claim against a police officer requires *some showing* that the defendant distorted

15

the process by which plaintiff was brought to trial, and an officer who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." (emphasis added) (quotation marks and citation omitted)); *Johnson v. City of New York*, No. 06-CV-630, 2010 WL 2771834, at *9 (E.D.N.Y. July 13, 2010) (finding plaintiff failed to establish initiation element where plaintiff offered "only his speculative assertion that the . . . indictment was procured as a result of conduct undertaken by [defendant]"); *see also Thorpe v. Duve*, No. 20-3679-CV, 2022 WL 332804, at *3 (2d Cir. Feb. 4, 2022) (summary order) (affirming grant of summary judgment on malicious prosecution claim where plaintiffs' "arguments depend[ed] on unsubstantiated speculation, and fail[ed] to create a genuine dispute of material fact as to an essential element of their section 1983 malicious prosecution claim").[9]

### III.  Conclusion

For the foregoing reasons, summary judgment is granted to Defendants on all claims. The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 62), and close this case.

---

[9] The Court notes that even if Plaintiff had alleged that either Ward or the Doe Defendant initiated the prosecution against him, summary judgment would still be appropriate because Plaintiff has abandoned this claim by entirely failing to address Defendants' argument that the prosecution was supported by probable cause, which is a complete defense to a claim of malicious prosecution.  (Defs' Mem. 20–24.)  *See also Kovaco*, 834 F.3d at 143; *Bryant*, 462 F. Supp. 3d at 270.

SO ORDERED.

Dated:    September 22, 2023
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge